**FLYING J, INC. Appellant–Defendant,**

v.

**Johnnie JETER, Appellee–Plaintiff.**

**No. 45A03–9902–CV–41.**

Court of Appeals of Indiana.

Dec. 22, 1999.

Keith A. Gaston, Carol A. Nemeth, White & Raub, Indianapolis, Indiana, Attorneys for Appellant.

## OPINION

SULLIVAN, Judge

Appellant, Flying J, Inc. (Flying J), challenges the trial court's denial of its motion to set aside default judgment.

We reverse and remand.

On July 14, 1996, Johnnie Jeter (Jeter), while patronizing Flying J's convenience store, slipped and fell causing injury. She filed a complaint against Flying J for negligence on July 13, 1998, and served Flying J with the summons and complaint on July 21, 1998. Flying J did not file an answer to her complaint, and on September 15, 1998, Jeter filed a motion for default judgment. On the same date, the trial court granted the motion and set a hearing upon the issue of damages for October 14, 1998.

On October 13, 1998, Flying J filed a motion to set aside default judgment, asserting that a "breakdown in communication" had occurred with his claims adjuster, and that this breakdown constituted excusable neglect. Record at 29.

The events preceding the default were that Jeter's attorney first provided Flying J's adjuster, Theodore Conti of GAB Robbins, Inc. (Conti), with a courtesy copy of the complaint. Conti then sent a copy of the complaint to Flying J and also spoke with Jeter's attorney to advise him that he would need to perfect service through Flying J's agent. Lori Dutson (Dutson) of Flying J instructed Conti to retain the law firm of White and Raub when the suit was filed and it became necessary to file an answer. Conti assumed that Flying J would inform him when it was served with the summons and complaint, and therefore, Conti did not retain the law firm after his conversation with Dutson. Flying J thought it had confirmed with Conti that he would retain counsel immediately without being separately informed when it was served. As a result of this misunderstanding, legal counsel was not obtained to defend Jeter's action until October 5, 1998.

In support of its motion, Flying J presented the affidavit of a Flying J employee who was working at Flying J's convenience store and witnessed Jeter's fall. The employee stated that while wet floor warning signs were posted on the day Jeter fell, the floor was dry when Jeter fell. Also, the employee stated that Jeter appeared intoxicated. On December 18, 1998, the trial

court denied Flying J's motion to set aside default judgment.

Upon appeal, Flying J contends that the trial court abused its discretion in concluding that Flying J had failed to demonstrate excusable neglect for not filing an answer to Jeter's complaint. Specifically, Flying J asserts that its breakdown in communication with Conti about whether he would retain legal counsel for it constituted excusable neglect.

■■■ Ind. Trial Rule 55(A) authorizes the entry of default judgment for failure to file a pleading. However, Ind. Trial Rule 55(C) allows the judgment to be set aside if grounds under Ind. Trial Rule 60(B) exist. T.R. 60(B) provides that a judgment may be set aside for "mistake, surprise, or excusable neglect." There are no fixed standards "to determine the bounds of 'mistake, surprise or excusable neglect.'" *Indiana Dept. of Natural Resources v. Van Keppel* (1991) Ind.App., 583 N.E.2d 161, 162, *trans. denied.* Courts must balance the need for efficient administration of justice with the preference for deciding cases on their merits and giving a party its day in court. *Id.* The decision to grant or deny a motion to set aside default judgment is within the equitable discretion of the trial court, and we will only reverse a trial court's ruling upon review for an abuse of discretion. *Whelchel v. Community Hospitals of Indiana, Inc.* (1994) Ind. App., 629 N.E.2d 900, 902, *trans. denied.*

Our Supreme Court, in *Whittaker v. Dail* (1992) Ind., 584 N.E.2d 1084, 1087, held that a breakdown in communication between an insurance company and its client which resulted in the client not hiring an attorney was a sufficient basis to set aside a default judgment. The client was under the impression that the insurance company would hire an attorney for him, and the insurance company adjuster thought that she had hired an attorney for the client. However, the attorney mistakenly believed that he was to file a declaratory judgment action against the client, rather than defend the client. The court

reasoned that there was no evidence of "foot dragging" on the part of the client, and that this breakdown in communication was excusable neglect. *Id.*

More recently, our Supreme Court again considered whether a breakdown in communication constituted excusable neglect. In *Smith v. Johnston* (1999) Ind., 711 N.E.2d 1259, a doctor failed to open his mail and thus, did not discover that a medical malpractice suit had been filed against him and his medical practice group. The person who regularly received the mail and handled all legal matters was in the process of leaving the group and was away from the office when the summons arrived. Therefore, a scrub nurse who normally did not receive mail signed for the summons delivered by certified mail and placed it on the doctor's desk. Even though the doctor was aware that the person who regularly received the mail was leaving the group, he did not open the summons until after a default judgment had been entered against him. The Court found this breakdown in communication to be "neglect, but not excusable neglect" and distinguished it from other cases which found breakdowns in communication excusable. *Id.* at 1262. The Court stated that in the other cases, "the defendants did all that they were required to do but subsequent misunderstandings as to the assignments given to agents of the defendants resulted in a failure to appear." *Id.*

■■ Unlike *Johnston* where the doctor did not open the mail on his desk, in the instant case, Flying J contacted its insurance adjuster, Conti, and instructed him to hire a particular law firm to defend Jeter's negligence suit. Flying J reasonably believed it had taken the appropriate measures to hire an attorney. However, Conti misunderstood that Flying J wanted him to hire an attorney promptly and instead believed that he was to wait until Flying J notified him of when it was served with the complaint. Flying J did all it was required to do, but a misunderstanding about the assignment Conti had resulted in Flying

J's failure to file an answer. Similar to the breakdown in communication in *Whittaker* between the insurance company and the attorney it hired, the failure on the part of Flying J to file an answer was not the result of its "foot dragging" and instead due to its misunderstanding with Conti.

■ Thus, we find that the neglect by Flying J in failing to file an answer to Jeter's complaint was excusable. However, "[t]o prevail on a T.R. 60(B) motion, the petitioner is not only required to show mistake, surprise, or excusable neglect, but also must show that he has a good and meritorious defense to the cause of action." *Butler v. Shipshewana Auction, Inc.* (1998) Ind.App., 697 N.E.2d 1285, 1289. A meritorious defense is one which would lead to a different result if the case was tried upon the merits. *Id.* Some admissible evidence must be presented which reveals that the defaulted party would suffer an injustice if the judgment were allowed to stand. *Id.*

■ Here, one of Flying J's employees witnessed Jeter fall on the floor. The employee stated that although wet floor warning signs were posted, the floor was dry when Jeter fell. Moreover, the employee observed that Jeter appeared to be intoxicated. If the default judgment is allowed to stand in this case, Flying J would suffer an injustice by not being permitted to disclose its employee's account of Jeter's slip and fall.

We conclude that Flying J has made a showing of a meritorious defense and should have the opportunity to be heard. We hold, therefore, that the trial court abused its discretion in failing to set aside the default judgment.

The judgment is reversed and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.

GARRARD, J., and BAILEY, J., concur.