William F. SHANE and Martha J. Shane, Appellants–Plaintiffs,

v.

HOME DEPOT USA, INC., Gershman–Brown & Associates, Inc., and G.B. Evansville Developer, LLC, Appellees–Defendants.

No. 82A01–0610–CV–465.

Court of Appeals of Indiana.

July 17, 2007.

Robin R. Craig, Evansville, IN, Attorney for Appellants.

Jeri D. Barclay, Louisville, KY, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

William F. Shane and Martha J. Shane ("the Shanes") appeal the trial court's granting of the motion to set aside default judgment filed by Gershman–Brown & Associates, Inc. ("Gershman–Brown"). We affirm.

### Issue

The Shanes present two issues, which we consolidate and restate as whether the trial court abused its discretion by granting Gershman–Brown's motion to set aside default judgment.

### Facts and Procedural History

On May 4, 2004, the Shanes were shopping at a Home Depot store in Evansville. Gershman–Brown owned and operated the premises upon which the store was located. The Shanes had parked their car in a handicapped parking space in the Home Depot parking lot. When the couple decided to purchase something, ninety-four-year-old William walked outside with the intention of pulling the car up to the store's front doors, so that he could assist his wife in loading their purchase. On his way to the car, William tripped over a "concrete electrical service panel, installed in the asphalt pavement of the parking lot, and located in the center of the handicapped parking spaces." Appellants' App. at 2. William fell to the ground and allegedly suffered physical injuries as a result.

On May 4, 2006, the Shanes filed their complaint for personal injury and loss of consortium against Home Depot USA, Inc., Gershman–Brown, and G.B. Evansville Developer, LLC.[1] The Shanes sent the complaint to Gershman–Brown via certified mail on May 9, 2006. Gershman–Brown accepted service on May 15, 2006, and therefore, pursuant to Indiana Trial Rule 6, its answer was due on June 5, 2006.[2] On July 6, 2006, Gershman–Brown had yet to file a responsive pleading, and the Shanes filed a motion for default judgment, a supporting affidavit, and a request for hearing on damages. The trial court granted the Shanes' motion and scheduled a damages hearing for August 16, 2006.[3]

On August 11, 2006, attorney Jeri Barclay entered her appearance on behalf of Gersham–Brown and filed a motion to set aside the default judgment, a supporting memorandum, and a motion to continue hearing. The trial court denied Gershman–Brown's motion to continue and scheduled the motion to set aside default judgment for August 16, 2006.

At the hearing, Gershman–Brown offered the affidavit of Dennis Mason, a claims director at Firemen's Fund, Gershman–Brown's insurer. In his affidavit, Ma-

---

1. Only Gershman–Brown filed an appellee's brief; however, pursuant to the Indiana appellate rules, all defendants are parties to this appeal. *See* Ind. Appellate Rule 17(A) ("A party of record in the trial court ... shall be a party on appeal.")

2. Pursuant to Indiana Trial Rule 6(C), a party's answer is due within twenty days after service of the complaint. We start counting on May 16, 2006, as Trial Rule 6(A) indicates that the date of service—in this case, May 15, 2006—should not be counted. The last day of the twenty-day period was Sunday, June 4, 2006. Therefore, the period ran until the end of the next day, Monday, June 5, 2006. The Shanes claim that Gershman–Brown's answer was due on June 6, 2006. Because Gershman–Brown filed its answer several weeks after June 6, 2006, however, this computation error does not affect the Shanes' claim.

3. It is unclear from the record when the trial court granted the Shanes' motion for default judgment.

son alleged that after Gershman–Brown had notified Fireman's Fund of the Shanes' complaint, Fireman's Fund mistakenly assigned the claim to an adjuster who had recently resigned from the company. He represented that the complaint was "inadvertently misplaced in the claims transfer process." *Id.* at 23. Gershman–Brown also offered an affidavit from Barclay, which stated that Gershman–Brown had identified several possible defenses based on photographs and medical records, which were attached as supporting exhibits. The Shanes objected to the admission of the exhibits and moved to strike them from the record. The trial court granted their motion to strike. At the conclusion of the hearing, the trial court granted Gershman–Brown's motion to set aside default judgment, vacated the Shanes' hearing on damages, and ordered Gershman–Brown to file its answer within twenty days.

On September 15, 2006, the Shanes filed a motion to correct error, which the trial court denied on September 19, 2006. The Shanes now appeal.

### Discussion and Decision

The Shanes contend that the trial court erred in denying their motion to correct error. We review a trial court's denial of a motion to correct error for an abuse of discretion. *Principal Life Ins. Co. v. Needler,* 816 N.E.2d 499, 502 (Ind. Ct.App.2004). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court, or reasonable inferences therefrom. *Id.* We also consider the standard of review for the underlying ruling, which in this case was the trial court's granting of Gershman–Brown's motion to set aside default judgment. *Id.* The decision whether to set aside a default judgment is given substantial deference on appeal. *Anderson v. State Auto Ins. Co.,*

851 N.E.2d 368, 370 (Ind.Ct.App.2006). The trial court's discretion is broad in these cases because each case has a unique factual background. *Id.* This Court will not reweigh the evidence or substitute our judgment for the judgment of the trial court. *Id.* Generally, default judgments are not favored in Indiana, for it has long been the preferred policy of this state that courts decide a controversy on its merits. *Walker v. Kelley,* 819 N.E.2d 832, 837 (Ind.Ct.App.2004). Any doubt of the propriety of a default judgment should be resolved in favor of the defaulted party. *Coslett v. Weddle Bros. Const. Co., Inc.,* 798 N.E.2d 859, 861 (Ind.2003).

Indiana Trial Rule 55(A) authorizes the entry of default judgment for failure to file a pleading. *Flying J, Inc. v. Jeter,* 720 N.E.2d 1247, 1249 (Ind.Ct.App.1999). Pursuant to Indiana Trial Rule 55(C), however, a default judgment may be set aside if grounds set forth in Indiana Trial Rule 60(B) exist. *Id.* In this case, Gershman–Brown alleges that one of those grounds—excusable neglect—did exist. There are no clear standards to determine what is and is not excusable neglect. *Id.* In making such a determination, "[c]ourts must balance the need for efficient administration of justice with the preference for deciding cases on their merits and giving a party its day in court." *Id.* Pursuant to Indiana Trial Rule 60(B)(2), a party seeking to set aside a judgment on the grounds of excusable neglect must also "allege" a meritorious defense. Here, the Shanes allege that Gershman–Brown failed to satisfy both of these requirements.

#### A. Excusable Neglect

Gershman–Brown claims that because it did not act with "willful disregard for the rules and orders of the court[,]" its "unintentional oversight" in failing to promptly file an answer to the Shanes' complaint is an example of excusable ne-

glect. Appellee's Br. at 4. We are unaware of any legal authority supporting Gershman–Brown's suggestion that if an act is not purposeful, then it is per se excusable in this context.

Indiana appellate courts have decided several cases on the issue that arises in the instant case, which is whether a breakdown in communication is excusable neglect. In *Whittaker v. Dail,* 584 N.E.2d 1084, 1087 (Ind.1992), our supreme court affirmed the trial court's decision to set aside a default judgment where there was a breakdown in communication between an insurance company and its client. In that case, Whittaker failed to appear at trial, and upon Dail's motion, the trial court entered default judgment against Whittaker. Several days later, two attorneys entered their appearance on behalf of Whittaker and moved to set aside the default judgment. At the hearing on this motion, Whittaker testified that he had informed his insurer, Allstate Insurance Company, of the upcoming trial date and that it was his understanding that Allstate would hire an attorney to represent him. An Allstate adjuster testified that she had agreed to hire an attorney for Whittaker, and after discussing the case with attorneys from a law firm, she believed that she had hired the firm to represent Whittaker. An attorney from the firm testified, however, that he misunderstood the adjuster's request and believed that he was being employed for the purpose of filing a declaratory judgment action against Whittaker and not to defend him. Our supreme court found that the trial court had abused its discretion in denying Whittaker's motion to set aside default judgment:

> [W]e hold that where the unchallenged credible testimony establishes a breakdown in communication which results in

a party's failure to appear for trial, the grounds for setting aside a default judgment, as specified in Indiana Trial Rule 60, have been satisfied and the trial court should set aside such default judgment. The record here unequivocally reveals that, while this case had been pending for approximately three years, there was no evidence of any "foot dragging" on the part of Whittaker, other than his inability to continue to pay his attorneys to defend him.[4] In view of the record, we hold that the trial court's denial of Whittaker's request to set aside the default judgment and to have a jury determine the facts of this case was an abuse of discretion.

*Id.*

Similarly, in *Flying J., Inc. v. Jeter,* this Court held that Flying J's failure to file an answer to Jeter's complaint was excusable neglect where it was not the result of "foot dragging" on the part of Flying J. 720 N.E.2d at 1250. In that case, Flying J's insurance adjuster received a courtesy copy of the complaint, forwarded it to Flying J, and informed Jeter that he would have to perfect service through Flying J's agent. A Flying J employee contacted the adjuster and requested that he employ a specific law firm to defend Flying J. The employee believed that the adjuster would hire the firm immediately; the adjuster, however, thought that he was to hire the firm after receiving notice from Flying J that it had received proper service. This misunderstanding led to Flying J's failure to file a timely answer. Guided by the *Whittaker* decision, this Court found that Flying J's failure to answer the complaint was not because it failed to take action. Rather, Flying J timely requested its adjuster to hire a law firm for its defense, and it was the misunderstanding between them that resulted in a failure to respond.

4. Whittaker had contacted the Allstate adjuster regarding legal representation after his

previous attorneys withdrew their appearance for his failure to pay them.

Finding an abuse of discretion, we reversed the trial court's decision not to set aside the default judgment.

In support of their argument, the Shanes direct us to *Smith v. Johnston,* 711 N.E.2d 1259 (Ind.1999). In that case, a doctor and his medical group were sued. When the summons arrived at the office, a scrub nurse who normally did not receive mail signed for the summons and placed it on the doctor's desk. The person who regularly received the mail and handled all legal matters for the office was in the process of leaving the group and was out of the office when the summons was delivered. The doctor did not open the summons until after a default judgment had been entered against him and his medical group. Our supreme court found that this breakdown in communication was "neglect, but not excusable neglect" because the defendants themselves failed to do what they were required to do, i.e., open the summons and notify their insurance company and/or counsel. *Id.* at 1262. Unlike in *Whittaker* and *Flying J,* in *Smith,* the failure to answer a complaint was not caused by a misunderstanding between defendants and their agents but rather was within defendants' own office.

In the instant case, Dennis Mason's affidavit explains that Gershman–Brown promptly notified Fireman's Fund of the Shanes' lawsuit on May 16, 2006—the day after Gershman–Brown was served with the complaint. However, the case was assigned to an adjuster who had left the company, and as a result, Fireman's Fund failed to take prompt action on Gershman–Brown's behalf. Clearly, Gershman–Brown did not "drag its feet" in the process of notifying Fireman's Fund of the lawsuit. Rather, it was a breakdown in communication *within the insurance company* that led to the default judgment against its insured. Therefore, we cannot conclude that the trial court abused its discretion in determining that Gershman–Brown's failure to file a timely answer was excusable neglect.[5]

### B. Meritorious Defense

■ In support of its allegation of a meritorious defense, Gershman–Brown presented the affidavit of its attorney, Jeri Barclay. The affidavit included the following statements:

1. I am the attorney for Defendant, Gershman–Brown & Associates, Inc. and G.B. Evansville Developers, LLC.

2. I was retained to defend Gershman–Brown & Associates, Inc. and G.B. Evansville Developers, LLC last week.

3. On Monday, August 14, 2006, I received Plaintiff's demand package from Gershman's insurance carrier that had previously been sent to them, as well as some photographs.

4. Based upon the documents received, it appears that there are defenses to both liability and damages.

5. With respect to liability, the area where Mr. Shane fell appears to be clearly visible from the parking lot. (See attached photograph).

6. Mr. Shane, is noted in the EMS report as having "tripped over the large asphalt utility cover." (See attached EMS report).

7. Upon information and belief, undersigned advises that a Home Depot employee overheard Mrs. Shane,

---

**5.** Although the trial court did not make a specific finding of excusable neglect, this was the only basis argued by Gershman–Brown in support of its Rule 60(B) motion. Therefore, we presume that because the trial court granted the motion, it necessarily concluded that Gershman–Brown's failure to respond to the Shanes' complaint was the result of excusable neglect.

Plaintiff's wife, saying to her husband, that from now on he must use his cane.

8. As such, there is an issue about whether or not Mr. Shane was exercising ordinary care for his own safety by walking without his cane, and tripping over a large utility cover.

9. Based upon documents provided in [Plaintiffs'] demand package, Mr. Shane was transported to Deaconess Hospital in Evansville, Indiana. In one of the nursing notes, Mr. Shane denies any pain while in the emergency room. (See attached nursing note).

10. Additionally, Mr. Shane, contemporaneous with being treated for his facial lacerations and contusions, was being treated for other medical problems that the doctors believe are unrelated to the fall. The discharge diagnosis is attached discussing his other complaints.

11. Based upon the very preliminary documents that undersigned has had a chance to review, there are defenses with respect to both liability and damages asserted in this case.

Appellants' App. at 25–26.

At the hearing on Gershman–Brown's motion to set aside default judgment, the Shanes argued that Barclay had no personal knowledge regarding the photographs and the medical documents referred to in her affidavit and that the attachments were not authenticated pursuant to Indiana Rule of Evidence 901. Upon the Shanes' objection to the admissibility of the attachments, the trial court excluded them. The Shanes contend that Barclay's affidavit alone does not satisfy the Rule 60(B) requirement of alleging a meritorious defense. We disagree.

Pursuant to Indiana Trial Rule 60(B)(2), a movant seeking to set aside a default judgment for excusable neglect "must allege a meritorious claim or defense." While this language was not added to the rule until January 1, 1999, Indiana courts had long recognized a party's requirement to make a prima facie showing of a meritorious defense to the judgment he seeks to set aside. *See, e.g., Minnick v. Minnick,* 663 N.E.2d 1226, 1228 (Ind.Ct.App.1996); *Plough v. Farmers State Bank Henry County,* 437 N.E.2d 471, 474 (Ind.Ct.App. 1982); *Fitzgerald v. Brown,* 168 Ind.App. 586, 590, 344 N.E.2d 309, 312 (1976); *Cantwell v. Cantwell,* 237 Ind. 168, 176, 143 N.E.2d 275, 279–80 (1957), *cert. denied.* Fifty years ago, our supreme court explained in *Cantwell* the principle upon which the meritorious defense requirement was based: "[E]quity will not interfere with a judgment recovered at law, unless such judgment is unjust or unconscionable. There is a maxim that courts of equity will not do or require the doing of a vain or useless thing, yet there is nothing more useless or vain than the setting aside of a judgment although no defense to it exists." 237 Ind. at 177–78, 143 N.E.2d at 280.

The Shanes rely upon several Indiana cases regarding meritorious defense, most (if not all) of which evolved from the common-law meritorious defense rule discussed above and not the actual content of Rule 60(B). The Shanes claim that Gershman–Brown failed to satisfy their burden on this issue because the documents and photographs cited in Barclay's affidavit were not properly authorized for admission before the trial court. Apparently, the Shanes interpret Indiana caselaw to mean that the trial court cannot properly grant a motion to set aside if the movant does not present at least one piece of admissible evidence of a meritorious defense, e.g., a witness's affidavit, certified medical records, etc.

After reviewing the relevant caselaw, we can see how some confusion might arise as to a movant's burden, and we welcome this opportunity to offer some clarification. To the extent that some cases suggest that the movant *must* present admissible evidence to satisfy the meritorious defense requirement of his motion to set aside judgment, we disagree. *See Ferguson v. Stevens*, 851 N.E.2d 1028, 1031 (Ind.Ct. App.2006) (testimony of defendant was sufficient to satisfy meritorious defense requirement); *Whelchel v. Community Hosp. of Indiana, Inc.*, 629 N.E.2d 900, 903 (Ind.Ct.App.1994) (affidavit stating that bill from plaintiff contained inappropriate billing was sufficient showing of meritorious defense in lawsuit to collect payment of the billed amount), *trans. denied; State DNR v. Van Keppel*, 583 N.E.2d 161, 164 (Ind.Ct.App.1991) (in action for non-payment of fees, affirmative defense of absence of a contractual relationship, supported by contract that did not on its face disclose a contractual relationship, satisfied meritorious defense requirement), *trans. denied* (1992). *But see Sanders v. Kerwin*, 413 N.E.2d 668, 671 (Ind.Ct.App.1980) (allegation that defendant received bill for $350 and paid $75 is sufficient showing of meritorious defense to claim for $475).

In our opinion, it is well within the trial court's discretion to determine whether the amount and/or the nature of evidence presented in support of a motion to set aside judgment indeed satisfies the meritorious defense requirement of a prima facie showing. We emphasize that "prima facie" means "sufficient to establish a fact or raise a presumption unless disproved or rebutted." BLACK'S LAW DICTIONARY 1228 (8th ed.2004). This is an appropriate burden, particularly because this type of hearing usually occurs during the initial stages of a case, making the acquisition and preparation of admissible evidence especially difficult. Furthermore, Trial Rule 60(B)(2) states that a party must "allege" a meritorious defense but provides no further guidance as to what constitutes a proper allegation under the rule. It is up to the trial court to determine on a case-by-case basis whether a movant has succeeded in making a prima facie allegation.

Along these lines, we tend to agree with the statement of another panel of this Court in a recent case: "[T]he real issue involved in establishing a meritorious defense is whether the factual circumstances of the accident itself would relieve [the movant] of liability." *Anderson*, 851 N.E.2d at 371. Applying that approach to the instant case, we recognize that "trip and fall" cases generally lend themselves to defenses such as comparative fault, a defense proposed by Barclay following her review of the documentation available to her at that time. *See* Tr. at 11.

In sum, Barclay's affidavit is based upon her review of photographs of the accident scene and Mr. Shane's medical records, which were the only documents available to her in the short time between her receipt of the case and the hearing. The Shanes do not suggest that these items, once authenticated, might be inadmissible at trial. In fact, the Shanes themselves produced the records and photographs to Gershman–Brown. With or without the admission of the documents referred to in the affidavit, the trial court acted well within its discretion in setting aside the default judgment against Gershman–Brown. Therefore, we affirm.

Affirmed.

BAKER, C.J., and KIRSCH, J., concur.